UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| CAROLINA CASUALTY INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>    v.<br><br>OAHU AIR CONDITIONING SERVICE, INC., dba OAHU AIR CONDITIONING CO.; PACIFIC COMMERCIAL SERVICES, LLC; MATSON NAVIGATION COMPANY, INC.; and DOES 1 through 100,<br><br>        Defendants. | CIV. NO. 2:13-1378 WBS AC<br><br><u>MEMORANDUM AND ORDER RE: MOTION TO DISMISS; MOTION TO STRIKE</u> |

----oo0oo----

        Plaintiff Carolina Casualty Insurance Company brought this action against Oahu Air Conditioning Service, Inc., doing business as Oahu Air Conditioning Co. ("Oahu"), Pacific Commercial Services, LLC ("Pacific"), and Matson Navigation Company, Inc. ("Matson") arising out of a hazardous waste spill by plaintiff's insured, Smith Transportation Systems, Inc. ("Smith"). Oahu and Pacific ("moving defendants") now move to

1  dismiss plaintiff's First Amended Complaint ("FAC") for failure
2  to state a claim upon which relief can be granted pursuant to
3  Federal Rule of Civil Procedure 12(b)(6), and to strike various
4  other allegations in the First Amended Complaint ("FAC") pursuant
5  to Federal Rule of Civil Procedure 12(f).  (Docket No. 16.)
6  I.   Factual & Procedural History
7          In October 2010, plaintiff issued an insurance policy
8  to Smith, a transportation company that specializes in
9  transporting hazardous waste to disposal sites.  (FAC ¶ 9.)  In
10 July 2011, Smith transported a trailer loaded with hazardous
11 material from San Jose, California to a waste disposal site in
12 Sacramento, California.  (Id. ¶ 11.)  After Smith delivered the
13 trailer, the Sacramento Police Department was called to the
14 disposal site because the trailer was observed emitting white
15 smoke.  (Id. ¶ 12.)  After several hours, an active fire broke
16 out and completely engulfed the trailer.  (Id.)  A subsequent
17 investigation revealed that the trailer contained refrigerator
18 waste oil that Oahu had shipped to California for disposal, and
19 that the fire resulted in the release of hazardous vapors and
20 contaminated water runoff into the environment.  (Id. ¶ 13.)
21         As a result of this incident, a number of claimants
22 issued Smith notices of violation and demanded that it pay for
23 the cleanup of the hazardous waste spill from the trailer.  (Id.
24 ¶ 22.)  Pursuant to Smith's insurance policy, which required
25 plaintiff to provide a defense and indemnify Smith from any
26 claims resulting from a hazardous waste spill, plaintiff settled
27 and paid upon numerous claims brought against plaintiff by
28 several claimants, including the City of Sacramento, the County

1  of Sacramento, and Clean Harbor Environmental Services.  (Id. ¶¶
2  23-24.)  In addition, plaintiff reimbursed Smith for its cleanup
3  expenses and indemnified it against additional personal injury
4  damages.  (Id. ¶ 25.)
5       Plaintiff alleges that defendants were involved in the
6  supply, packing, and transportation of the refrigerator waste oil
7  that Smith transported to Sacramento.  (Id. ¶¶ 17-21.)  As a
8  result, plaintiff and Smith issued a claim and demand to
9  defendants for reimbursement of the payments plaintiff incurred
10 as a result of the hazardous waste spill.  (Id. ¶ 26.)
11 Defendants did not pay.  (Id.)
12      Plaintiff then brought this action seeking: (1)
13 subrogation pursuant to Section 112(c) of the Comprehensive
14 Environmental Response, Compensation, and Liability Act
15 ("CERCLA"), 42 U.S.C. § 9612(c); (2) contribution pursuant to
16 Section 113(f) of CERCLA, 42 U.S.C. § 9613(f); (3) contribution
17 and/or indemnity pursuant to the Hazardous Substance Account Act
18 ("HSAA"), Cal. Health & Safety Code § 25363; (4) equitable
19 indemnity under California common law; (5) allocation and
20 apportionment of fault under California common law; (6)
21 contribution under California common law; and (7) subrogation
22 under California common law.  (Docket No. 7.)  Moving defendants
23 now move to dismiss each of these claims for failure to state a
24 claim upon which relief can be granted pursuant to Rule 12(b)(6),
25 to strike plaintiff's references to the "tort of another"
26 doctrine pursuant to Rule 12(f), and to strike allegations
27 related to personal injury or toxic tort claims pursuant to Rule
28 12(f).  (Docket No. 16.)

## II. Motion to Dismiss

On a motion to dismiss under Rule 12(b)(6), the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972). To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," and where a complaint pleads facts that are "merely consistent with a defendant's liability," it "stops short of the line between possibility and plausibility." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief' requires more than labels and conclusions . . . ." Twombly, 550 U.S. at 555 (alteration in original) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; see also Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

### A. CERCLA Section 112(c)

Section 112(c) of CERCLA provides that "[a]ny person .

4

. . who pays compensation pursuant to this chapter to any claimant for damages or costs resulting from the release of a hazardous substance[1] shall be subrogated to all rights, claims, and causes of action for such damages and costs of removal that the claimant has under this chapter or any other law." 42 U.S.C. § 9612(c)(2).  The Ninth Circuit has construed CERCLA to require that an "insured must first make a claim to . . . a potentially liable party before an insurer can bring a subrogation action under [S]ection 112(c)."  Chubb Custom Ins. Co. v. Space Systems/Loral Inc., 710 F.3d 946, 971 (9th Cir. 2013).

In Chubb, the plaintiff brought a subrogation claim under Section 112(c) after its insured incurred environmental cleanup costs and submitted an insurance claim.  Id. at 957.  The district court held, and the Ninth Circuit agreed, that plaintiff's insured was not a "claimant" under the statute because it had not submitted any claim for reimbursement to the defendants, who plaintiff alleged were potentially responsible parties ("PRPs").  Id. at 965-66.  The Ninth Circuit reasoned that requiring a plaintiff's insured to submit a claim to other PRPs for reimbursement prior to pursuing a subrogation action furthered two of CERCLA's major policy goals: preventing the

---

[1] Although the term "hazardous substance" expressly excludes petroleum and its derivatives, 42 U.S.C. § 9601(14)(F), the petroleum exclusion does not apply to the refrigerant waste oil that Smith transported.  See, e.g., Cose v. Getty Oil Co., 4 F.3d 700, 704 (noting that "EPA does not consider materials such as waste oil to which listed CERCLA substances have been added to be within the petroleum exclusion" (citation omitted)); Mid Valley Bank v. North Valley Bank, 764 F. Supp. 1377, 1384 (E.D. Cal. 1991) (Karlton, J.) (noting that "the petroleum exclusion does not apply to waste oil").

5

1  insured from obtaining double recovery from the insurance company
2  and any PRPs; and identifying PRPs so that they, rather than
3  insurance companies, would shoulder the cost of environmental
4  cleanup.  Id. at 968-70.

5  Unlike the plaintiff in Chubb, whose insured made no
6  claim for reimbursement from the defendants whatsoever, plaintiff
7  alleges that Smith "made demand and claim upon and against
8  Defendants . . . for payment and reimbursement" of the expenses
9  Smith incurred.  (FAC ¶ 26.)  Although moving defendants maintain
10 that this allegation is insufficient to show that Smith made a
11 "formal claim," neither Chubb nor the statute supports this
12 conclusion.  While Chubb held that the term "claimant" refers to
13 "any person who presents a written demand for reimbursement of
14 monetary costs . . . for a CERCLA violation" to a PRP, it did not
15 specify the precise form that a written claim for reimbursement
16 must take.  See 710 F.3d at 959.

17 Nor does 40 C.F.R. § 307.30(a), which governs requests
18 for payment from a PRP, require dismissal.  Although that
19 regulation outlines eight specific criteria that a written claim
20 must satisfy, it is inapplicable here because it applies only to
21 written requests to PRPs for reimbursement "before filing a claim
22 against the Fund," rather than written requests for reimbursement
23 before filing a civil action for subrogation pursuant to Section
24 112(c).  40 C.F.R. § 307.30(a).  Even if it were applicable to
25 Smith's demands for reimbursement, it does not follow that
26 plaintiff's complaint must specify in exact terms how Smith's
27 demand letter complied with these requirements.  See Twombly, 550
28 U.S. at 555 (noting that a complaint "does not need detailed

6

factual allegations" to survive a motion to dismiss).  At this stage in the litigation and in the absence of controlling authority showing otherwise, plaintiff's allegation that Smith sent a written demand for reimbursement to defendants suffices to show that Smith is a "claimant" and that plaintiff may therefore seek subrogation under Section 112(c).  Accordingly, the court must deny moving defendants' motion to dismiss this claim.

### B. CERCLA Section 113(f)

Section 113(f) of CERCLA provides that "[a]ny person may seek contribution from any other person who is liable or potentially liable under Section 9607(a) of this title, during or following any civil action under section 9606 . . . or under section 9607(a) of this title."  42 U.S.C. § 9613(f)(1).  In addition, the statute provides that a "person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such an action in an administrative or judicially approved settlement may seek contribution" from a person who is not a party to that settlement.[2]  42 U.S.C. § 9613(f)(3)(B).  The Supreme Court has

---

[2] Although neither the Supreme Court nor the Ninth Circuit has explicitly addressed the question of whether CERCLA's use of the term "State" encompasses political subdivisions of a state, at least one judge in this district has held that CERCLA's use of the term "does not exclude municipalities." Unigard Ins. Co. v. City of Lodi, Civ. No. 98-1712 FCD JFM, 1999 WL 33454809, at *5 (E.D. Cal. Mar. 5, 1999).  The Supreme Court has likewise held in the context of the Federal Insecticide, Fungicide, & Rodenticide Act that the "exclusion of political subdivisions cannot be inferred from the express authorization to the 'State[s]' because political subdivisions are components of the very entities the statute empowers." Wis. Pub. Intervenor v. Mortier, 501 U.S. 597, 608 (1991).  Accordingly, plaintiff's alleged settlement with the City and/or County of Sacramento is sufficient to demonstrate that it "resolved its liability to . . .

held that, in the absence of such a civil action or settlement, a plaintiff may not seek contribution under Section 113(f).  Cooper Indus., Inc. v. Aviall Servs., Inc., 543 U.S. 157, 166 (2004).

Here, plaintiff alleges that it paid significant sums to several parties who sent letters to Smith demanding reimbursement, including the City of Sacramento, the County of Sacramento, and Clean Harbors Environmental Services.  (FAC ¶ 24.)  Moving defendants contend that this allegation is insufficient to state a claim under Section 113 because it does not explicitly allege that these sums were paid in order to settle a civil action under CERCLA.  (See Moving Defs.' Reply at 6-7 (Docket No. 18).)  Even if this were so, plaintiff's allegation permits the reasonable inference that plaintiff paid these sums in order to settle potential CERCLA claims against Smith.[3]  This inference is particularly justified in light of the Ninth Circuit's observation that that "the receipt of a PRP notice is the effective commencement of a 'suit' necessitating a legal defense."  Aetna Cas. & Sur. Co. v. Pintlar Corp., 948 F.2d 1507, 1517 (9th Cir. 1991).  Because plaintiff has sufficiently

---

. a state" pursuant to Section 113(f).

[3]  Relying on a PACER search of all federal actions in the Ninth Circuit to which Clean Harbors has been a party, moving defendants also contend that there is no record of any CERCLA-based action between plaintiff and Clean Harbors and that, as a result, plaintiff's allegation that it settled such a claim is implausible.  (See Moving Defs.' Reply at 6; Moving Defs.' Req. for Judicial Notice Exs. A-E (Docket No. 18-1).)  Even if the court took judicial notice of this search and concluded that moving defendants were correct, this evidence does not foreclose the possibility that Smith settled its liability to either the City or County of Sacramento in a CERCLA action, or that Smith settled its liability to these parties after the receipt of a PRP notice but before the commencement of a civil action.

1  alleged that it paid to settle the claims against Smith, it has
2  stated a claim for contribution from other PRPs under Section
3  113(f).[4]

4        Although Oahu concedes that it is a PRP, Pacific
5  contends that it is not a PRP because it is not a "transporter"
6  of hazardous waste as that term is defined by 42 U.S.C. §
7  9607(a)(4).  (Moving Defs.' Mem. 14-15.)  The court need not
8  resolve this argument because plaintiff has sufficiently alleged
9  that Pacific "arranged for disposal or treatment, or arranged
10 with a transporter for transport for disposal or treatment" of
11 the refrigerator waste oil.  42 U.S.C. § 9607(a)(3).  The Supreme
12 Court has clarified that "an entity may qualify as an arranger
13 under § 9607(a)(3) when it takes intentional steps to dispose of
14 a hazardous substance."  Burlington N. & Santa Fe Ry. Co. v.
15 United States, 556 U.S. 599, 611 (2009) (citation omitted).

16       Plaintiff relies on the manifest of the waste oil to
17 allege that Pacific "pack[ed] the hazardous refrigerant oil for
18 transport" and directed its transport from Hawaii to California
19 for disposal.  (FAC ¶ 18.)  Even if Pacific is correct that it is
20 not a "transporter" of the waste oil because it did not select
21 the site for disposal, plaintiff's allegation is sufficient to

---

[4] Moving defendants also rely on the Supreme Court's holding in United States v. Atlantic Research Corporation that an insurer cannot seek contribution under Section 107 of CERCLA because "a party [that] pays to satisfy a settlement agreement or a court judgment . . . does not incur its own costs of response" but instead "reimburses other parties for costs that those parties incurred."  551 U.S. 128, 139 (2007).  Their reliance is misplaced because plaintiff does not sue under Section 107, which "permits recovery of cleanup costs but does not create a right to contribution," but rather under Section 113(f), which "explicitly grants PRPs a right to contribution."  Id. at 138-39.

show that Pacific took steps to "arrange" for the disposal of the waste oil under all but the narrowest readings of Section 107(a)(3).  Cf. Cadillac Fairview/California, Inc. v. United States, 41 F.3d 562, 565 n.4 (9th Cir. 1994) ("Section 107(a)(3) must be given a 'liberal judicial interpretation . . . consistent with CERCLA's overwhelmingly remedial statutory scheme.'" (citations omitted)).  Accordingly, plaintiff has sufficiently alleged that both moving defendants are PRPs, and the court must deny their motion to dismiss plaintiff's Section 113(f) claim.

     C.   The HSAA

The HSAA provides that "[a]ny person who has incurred removal or remedial action costs in accordance with this chapter or [CERCLA] may seek contribution or indemnity from any person who is liable pursuant to this chapter . . . ."  Cal. Health & Safety Code § 25363(e).  "Although the HSAA is not identical to CERCLA, the HSAA expressly incorporates the same liability standards, defenses, and classes of responsible persons as those set forth in CERCLA.  As such, the HSAA is generally interpreted consistent with CERCLA."  Coppola v. Smith, 935 F. Supp. 2d 993, 1011 (E.D. Cal. 2013) (Ishii, J.) (citations omitted); accord Castaic Lake Water Agency v. Whittaker Corp., 272 F. Supp. 2d 1053, 1084 n.40 (C.D. Cal. 2003) ("HSAA creates a scheme that is identical to CERCLA with respect to who is liable." (citations and internal quotation marks omitted)).

Moving defendants contend that because they are not liable under CERCLA, they cannot be liable under the HSAA. (Moving Defs.' Mem. at 15-16.)  In fact, the inverse is true: because plaintiffs have stated a claim under CERCLA, they have

also stated a claim under the HSAA.  See Coppola, 935 F. Supp. 2d at 1011.  Accordingly, the court must deny moving defendants' motion to dismiss this claim.[5]

### D. Preemption of Common-Law Claims

"CERCLA does not completely occupy the field of environmental regulation . . . At best, CERCLA may provide a conflict preemption defense to . . . state law claims." ARCO Envtl. Remediation, L.L.C. v. Dep't of Health and Envtl. Quality of Mont., 213 F.3d 1108, 1114 (9th Cir. 2000).  Conflict preemption bars a state-law claim only "where compliance with both the state and federal regulations is a physical impossibility, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  Fireman's Fund Ins. Co. v. City of Lodi, 302 F.3d 928, 943 (9th Cir. 2002) (quoting Cal. Fed. Sav. & Loan Ass'n v. Guerra, 479 U.S. 272, 281 (1987)) (internal quotation marks

---

[5]  Although the court determines that plaintiff has stated a claim under the HSAA, it recognizes that CERCLA's prohibition on double recovery precludes plaintiff from recovering the same costs under its HSAA claim or any of its common-law claims as it may recover under its CERCLA claims.  42 U.S.C. 9614(b); Coppola, 935 F. Supp. 2d at 1012 ("CERCLA prohibits a person from recovering compensation for the same removal costs or damages or claims pursuant to other state or federal law." (citation omitted.)

Because the court cannot determine at this stage in the litigation whether plaintiff will ultimately prevail on its CERCLA claims, or whether it seeks to recover the same costs under its state-law claims as its CERCLA claims, the court will permit plaintiff to plead both its CERCLA and state-law claims.  See Fed. R. Civ. P. 8(d)(3) ("A party may state as may separate claims . . . as it has, regardless of consistency."); cf. Santa Clara Valley Water Dist. v. Olin Corp., 655 F. Supp. 2d 1066, 1079-80 (N.D. Cal. 2009) (recognizing authority stating that a plaintiff in a CERCLA action "is allowed to plead alternative theories, even if it cannot ultimately seek duplicate recovery.")

11

omitted).  Because courts "presume[] that Congress does not cavalierly pre-empt state-law causes of action," preemption analysis "start[s] with the assumption that the historic police powers of the States were not to be superseded . . . unless that was the clear and manifest purpose of Congress." <u>Medtronic, Inc. v. Lohr</u>, 518 U.S. 470, 485 (1996) (citation and internal quotation marks omitted).

   Moving defendants contend that plaintiff's "state common law remedies . . . are preempted, because they conflict with the remedial and settlement scheme approved by Congress." (Moving Defs.' Mem. at 16:15-17.)  On the contrary, Congress has repeatedly clarified that CERCLA does not preempt state-law contribution, indemnity, or subrogation claims.  42 U.S.C. § 9614(a) ("Nothing in this chapter shall be construed or interpreted as preempting any State from imposing any additional liability or requirements with respect to the release of hazardous substances within such state."); 42 U.S.C. § 9613(f)(1) ("Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 . . . or 9607 of this title."); 42 U.S.C. § 9612(c)(2) ("Any person . . . who pays compensation pursuant to this chapter to any claimant . . . shall be subrogated to all rights, claims, and causes of action . . . that the claimant has under this chapter <u>or any other law</u>.") (emphasis added).  The Ninth Circuit has similarly emphasized that the "plain language" of CERCLA "precludes any finding of preemption as to state law claims for contribution."  <u>City of Emeryville v.</u>

Robinson, 621 F.3d 1251, 1262 (9th Cir. 2010).[6]

Fireman's Fund, the only authority from the Ninth Circuit that moving defendants cite, is entirely consistent with this result.  There, the court considered whether MERLO, a municipal ordinance passed by the City of Lodi to complement CERCLA and the HSAA, was preempted.  302 F.3d at 147.  In so doing, the court invalidated a provision of MERLO "protect[ing] Lodi from contribution claims by other PRPs" because it determined that this provision conflicted with those provisions of CERCLA specifically authorizing contribution claims against other PRPs.  Id.  But it does not follow from that decision, which invalidated a municipal ordinance limiting contribution claims against the City of Lodi, that CERCLA categorically

---

[6] Moving defendants also cite several cases from courts within the Ninth Circuit holding that a plaintiff must incur response costs consistent with the National Contingency Plan ("NCP") in order to bring an action under Section 107 of CERCLA.  (See Moving Defs.' Reply at 2-4 (citations omitted).)  None of those cases hold that failure to comply with the NCP preempts a plaintiff from bringing a state-law claim for contribution, indemnity, or subrogation.  Nor do they hold that dismissal on the basis of preemption is appropriate when a plaintiff fails to allege compliance with the NCP in the complaint.

Despite plaintiff's insistence to the contrary, Fireman's Fund did not adopt the Seventh Circuit's holding in PMC Inc. v. Sherwin Williams Company, 151 F.3d 610, 618 (7th Cir. 1998) that failure to comply with the NCP bars a plaintiff from bringing a state-law action for contribution.  Rather, the Ninth Circuit noted only that its holding that MERLO's restrictions on contribution claims were preempted "is not inconsistent with the reasoning of other circuits that . . . litigants may not invoke state statutes in order to escape the application of CERCLA[] . . . ."  302 F.3d at 947 n.15.  To the extent that moving defendants rely on PMC or on Niagara Mohawk Power Corporation v. Chevron U.S.A., Inc., 596 F.3d 112, 138 (2d Cir. 2010), in support of the proposition that CERCLA does preempt plaintiff's state-law claims, City of Emeryville makes clear that those holdings do not reflect the law of the Ninth Circuit.

preempts state-law contribution claims.  This conclusion would flout not only the plain language of CERCLA, but the court's holding that MERLO was invalid in part because it "legislatively insulates Lodi from contribution liability under state and federal law."  Id. (emphasis added).

Moving defendants' contention that plaintiff's common-law claims are preempted is inconsistent both with the presumption against preemption, see Medtronic, 518 U.S. at 485, and, more importantly, with binding Ninth Circuit authority and the text of CERCLA itself.  Accordingly, the court must deny moving defendants' motion to dismiss plaintiff's common-law claims for apportionment of fault, contribution, indemnity, and subrogation.

III. Motion to Strike

Rule 12(f) authorizes the court to strike from the pleadings "any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "Motions to strike are generally viewed with disfavor, and will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties."  Champlaie v. BAC Home Loans Servicing, LP, 706 F. Supp. 2d 1029, 1039 (E.D. Cal. 2009) (Karlton, J.) (citations omitted).  "If the court is in doubt as to whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied, leaving an assessment of the sufficiency of the allegations for adjudication on the merits."  Id.

Here, moving defendants do not argue that they will be prejudiced by plaintiff's references to the "tort of another"

doctrine or to potential liability for personal injury and/or toxic exposure claims. The absence of prejudice is a sufficient reason to deny moving defendants' motion to strike. See, e.g., N.Y.C. Emps.' Ret. Sys. v. Berry, 667 F. Supp. 2d 1121, 1128 (N.D. Cal. 2009) ("Where the moving party cannot adequately demonstrate . . . prejudice, courts frequently deny motions to strike even though the offending matter was literally within one or more of the categories set forth in Rule 12(f)." (citation and internal quotation marks omitted)). The court is also unable to determine at this stage in the litigation that these references "have no logical connection to the controversy at issue." In re UTStarcom, Inc. Sec. Litig., 617 F. Supp. 2d 964, 969 (N.D. Cal. 2009); see also Champlaie, 706 F. Supp. 2d at 1039. Accordingly, the court will deny moving defendants' motion to strike.

IT IS THEREFORE ORDERED that:

(1) moving defendants' motion to dismiss the Complaint be, and the same hereby is, DENIED;

(2) moving defendants' motion to strike be, and the same hereby is, DENIED.

Dated:   January 28, 2014

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

15