1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  CAROLINA CASUALTY INSURANCE            No.  2:13-cv-1378 WBS AC
    COMPANY,
12
                    Plaintiff,
13                                          ORDER
          v.
14
    OAHU AIR CONDITIONING SERVICE,
15  INC. dba OAHU AIR CONDITIONING
    CO., et al.,
16
                    Defendants.
17

18
         Pending before the court are cross-motions to compel by plaintiff Carolina Casualty
19
    Insurance Co. ("CCIC"), and defendant Pacific Commercial Services LLC ("PCS").  ECF
20
    Nos. 106 (PCS's motion) & 107 (plaintiff's motion).  The motions came on for hearing on
21
    February 18, 2015, and were taken under submission.  The court ordered the parties to file
22
    declarations and detailed privilege logs of the documents they were withholding, and ordered
23
    plaintiff to produce a certain settlement agreement to defendant PCS.  ECF No. 111.
24
                    I.  BACKGROUND OF THE LITIGATION
25
         This is a lawsuit by plaintiff insurance company to get reimbursement of money it paid to
26
    settle claims against its insured, Smith Systems Transportation, Inc. ("Smith Systems").  The
27
    claims arose from a fire and hazardous waste spill from containers that Smith Systems had
28
                                      1

1   transported to a waste disposal site in Sacramento, California from San Jose, California.  The

2   claims were made by the City of Sacramento, the County of Sacramento and Clean Harbor

3   Environmental Services ("Clean Harbor").  In addition, plaintiff reimbursed Smith for its cleanup

4   expenses and indemnified it against additional personal injury damages.

5       Plaintiff sued (1) Pacific Commercial Services, LLC ("PCS"), which allegedly packed the

6   hazardous waste into the containers, (2) Oahu Air Conditioning Service, Inc. ("Oahu"), which

7   allegedly generated the hazardous waste and negligently packed it into the containers, and

8   (3) Matson Navigation Company, Inc. ("Matson"), which allegedly transported the hazardous

9   waste to California.  In turn, defendant PCS filed a third-party complaint against Smith Systems

10  and Clean Harbor, and defendant Oahu filed a third-party complaint against Smith Systems,

11  Clean Harbor and Don Sozzi.

12              II.  PLAINTIFF'S MOTION TO COMPEL

13      Plaintiff CCIC seeks to compel PCS to produce all documents referring or relating to all

14  relationships, contracts, communications and agreements from January 1, 2006 to the present,

15  between PCS and Oahu; all such communications and agreements between PCS and Matson; and

16  all documents relating to the incident, the cleanup, PCS's defenses and contentions, and its third-

17  party claims.  ECF Nos. 110 at 17-23 & 110-1 at 2-39.  Defendant PCS produced no documents

18  in response to these RFPs.  ECF No. 110 at 14.  PCS asserted that the RFPs call for the

19  production of documents "that are privileged or subject to the work product doctrine, including

20  documents protected by the joint defense and common interest doctrines."  ECF No. 17-23 &

21  110-1 at 2-39.  PCS produced a "privilege log" of the documents it was withholding.  However,

22  pursuant to an earlier stipulation between the parties (ECF No. 34 ¶ 8), this "privilege log"

23  contained only three entries, setting forth broad categories of documents.  ECF No. 109-2 at 27.[1]

24      In addition, PCS stated that it had already produced responsive, non-privileged documents

---

[1]  The withholder of properly requested discovery material must produce "some form" of
privilege log describing what is being withheld, and sufficient to allow other parties to assess the
claim of privilege or protection.  Fed. R. Civ. P.  26(b)(5)(A)(ii); Perry v. Schwarzenegger, 591
F.3d 1126, 1133 (9th Cir. 2009) ("[w]e agree that some form of a privilege log is required" under
the rule).

1  other than those that were already produced or were as readily available to plaintiff as they were

2  to PCS.  ECF No. 17-23 & 110-1 at 2-39.  PCS narrowed the scope of documents it said it had

3  produced, to those relating to "the collection, transport, or disposal of waste."  CCIC has not

4  argued here that this narrowing was improper, and so the court does not address it.

5      A.  Joint Defense Privilege

6      Plaintiff moves to compel the production of documents that PCS has withheld under a

7  claim of joint defense privilege.  Plaintiff argues that PCS has the burden of establishing the

8  existence of the privilege, and that it has not made the required showing.

9          1.  The law

10     "The Ninth Circuit has long recognized that the joint defense privilege is 'an extension of

11  the attorney-client privilege.'"  United States v. Gonzalez, 669 F.3d 974, 978 (9th Cir. 2012)

12  (quoting United States v. Henke, 222 F.3d 633, 637 (9th Cir. 2000)).  "[N]o written agreement is

13  required, and . . . a JDA may be implied from conduct and situation, such as attorneys exchanging

14  confidential communications from clients who are or potentially may be codefendants or have

15  common interests in litigation."  Gonzalez, 669 F.3d at 979.  Moreover, "the case law is clear that

16  one party to a JDA cannot unilaterally waive the privilege for other holders."  Gonzalez, 669 F.3d

17  at 982.

18     Since the joint defense privilege is but an extension of the attorney-client privilege (and

19  not a separate privilege), the party asserting it "'has the burden of establishing the [existence of an

20  attorney-client] relationship *and* the privileged nature of the communication.'"  United States v.

21  Graf, 610 F.3d 1148, 1156 (9th Cir. 2010) (emphasis in text) (quoting United States v. Ruehle,

22  583 F.3d 600, 607 (9th Cir. 2009)).

23      Typically, an eight-part test determines whether information is
24      covered by the attorney-client privilege:

25          (1) Where legal advice of any kind is sought (2) from a
        professional legal adviser in his capacity as such, (3) the
        communications relating to that purpose, (4) made in
26          confidence (5) by the client, (6) are at his instance
        permanently protected (7) from disclosure by himself or by
27          the legal adviser, (8) unless the protection be waived.

28  ////

3

1    Ruehle, 583 F.3d at 607-08 (quoting In re Grand Jury Investigation, 974 F.2d 1068, 1071 n. 2

2    (9th Cir. 1992)).

3              2.  PCS's showing regarding Oahu

4              PCS has now submitted a Supplemental Declaration of Christopher T. Johnson, an

5    attorney for PCS, together with a privilege log that identifies the documents being withheld

6    pursuant to the joint defense privilege and the work product doctrine.  ECF No. 116 ("Johnson

7    Privilege Log Decl.").  The declaration establishes that PCS and Oahu "executed a written,

8    confidential Joint Defense Agreement ("JDA") on December 11, 2013."  Id. ¶ 4.  According to

9    the declaration, "communications between Oahu and PCS regarding this litigation were to be

10   treated as confidential and protected by a joint defense privilege."  Id.  The agreement "references

11   and includes communications made prior to its execution, that both parties made in confidence

12   and intended to be protected by the JDA."

13             The declaration further establishes that the withheld documents that relate to

14   communications between PCS and Oahu, including those that pre-date the JDA, are identified in

15   the privilege log, are the subject of the JDA, "relate exclusively to defending against Plaintiff's

16   claims" here, were made between lawyers for PCS and Oahu, were made in confidence and that

17   PCS's lawyers did not share these communications to anyone other than counsel for Oahu.  Id.,

18   ¶¶ 5-8.  These sworn assertions facially establish the existence of the joint defense privilege.

19             The court notes that PCS does not assert that Oahu's lawyers kept the communications

20   confidential, and it has not provided a declaration from Oahu's counsel so asserting.  It does not

21   appear that such a declaration is necessary however, since (1) as a factual matter, Oahu agreed to

22   keep the communications confidential, id., ¶ 4, and no evidence has been presented that it failed

23   to do so, and (2) as a legal matter, Oahu cannot unilaterally waive the protection for PCS.

24   Gonzalez, 669 F.3d at 982.

25             3.  PCS's showing regarding Matson

26             PCS also asserts the joint defense privilege for communications it had with, or shared

27   with, Matson's counsel.  See Johnson Privilege Log Decl., Exh. A ¶¶ 2-16, 15, 20, 26-35, 76,

28   ////

4

126-27, 129, 131, 160-61, 194-95, 196-201, 203-05, 209-13, 217-28, 232-40, 243-51.[2]  However, PCS has made no showing that Matson was participating in the joint defense agreement, or had any intention of keeping its communications with PCS's counsel confidential.  PCS's counsel asserts that "my communications with Matson were made in confidence," and goes on to state that <u>he</u>, PCS's counsel, "intended these communications to be in confidence."  Johnson Privilege Log Decl. ¶ 9.  PCS does not assert, nor has it offered a declaration from Matson, that <u>Matson</u> intended the communications to be in confidence.  To the contrary, the privilege log shows that Matson's counsel received communications authored by PCS's counsel and by Oahu's counsel regarding joint defense issues and the joint defense agreement, but that "Matson did not execute the JDA."  <u>See</u> Johnson Privilege Log Decl. ¶ 9 & Exh. A ¶¶ 26-35.

4.  <u>Resolution</u>

PCS has made a facial showing that those of its listed communications with Oahu, that were not shared with Matson, are protected from disclosure by the joint defense privilege.  Accordingly, plaintiff CCIC's motion to compel production of those documents will be denied.  The motion will be denied without prejudice, however, since plaintiff did not have the benefit of the detailed privilege log, or PCS's referenced declaration, at the time it made its motion.

PCS has failed to make a facial showing that the above listed communications with, or shared with, Matson, are protected by the joint defense privilege or the work produce doctrine.  Accordingly, plaintiff's motion to compel production of those documents will be granted.

B.  <u>Other Documents</u>

Plaintiff argues that some documents that PCS claims do not exist were in fact produced by a third-party defendant, leading it to believe that there must be other documents PCS is withholding.  For example, plaintiff asked for "all agreements" between PCS and Clean Harbor from January 1, 2006 to the present.  PCS produced an unsigned contract with Clean Harbor.  However, Clean Harbor produced a signed version of the same contract.

The court will not order PCS to produce a document it asserts it does not have.  Clean

---

[2]  The "Author" or "Recipient" of each of these withheld documents is Marilyn Raia ("MR") or Sloan White ("SW"), both being lawyers for Matson.  <u>See</u> ECF No. 116 at 26.

1    Harbor's possession of a signed version of the contract does not mean that PCS must also have a

2    signed version of it.  PCS's counsel's signature on the discovery responses constitutes a

3    "certification" that he has provided all responsive documents, except those specifically listed as

4    being withheld for one reason or another.  See Fed. R. Civ. P. 26(g)(1).

5                          III.  DEFENDANT PCS's MOTION TO COMPEL

6            Defendant PCS seeks to compel the production of documents that plaintiff CCIC says are

7    protected by the work product doctrine, namely (1) three reports about the incident authored by

8    Elite Investigations,[3] and (2) plaintiff's claim file.[4]  Plaintiff asserts that the reports and claim file

9    are protected from disclosure by the work product doctrine of Fed. R. Civ. P. 26(b)(3) ("trial

10   preparation" materials).

11           A.  Elite Investigations – Reports

12           PCS seeks to compel the production of reports about the incident that were authored by

13   Elite Investigations (not a party).  Plaintiff asserts that the reports were prepared for its attorneys

14   in anticipation of litigation, and are therefore protected by the work product doctrine of Fed. R.

15   Civ. P. 26(b)(3) ("trial preparation" materials).  PCS asserts that the reports were prepared in the

16   ordinary course of plaintiff's business as an insurer, and therefore is not protected from

17   disclosure.

18               1.  The law

19               [T]o qualify for protection against discovery under [Rule 26(b)(3)],
                 documents must have two characteristics: (1) they must be
20               'prepared in anticipation of litigation or for trial,' and (2) they must
                 be prepared 'by or for another party or by or for that other party's
21               representative.'"

22   United States v. Torf (In re Grand Jury Subpoena (Mark Torf/Torf Environmental Management)),

23   357 F.3d 900, 907 (9th Cir. 2004) (quoting In re California Pub. Utils. Comm'n, 892 F.2d 778,

24   780-81 (9th Cir. 1989)).  "At its core, the work-product doctrine shelters the mental processes of

25   _____
     [3]  After the hearing on this matter, the court ordered the parties to submit declarations establishing
26   the "totality of the circumstances" surrounding the Elite Investigation reports, to assist the court
     in determining whether the reports are work product protected by Fed. R. Civ. P. 26(b)(3) and
27   United States v. Torf (In re Grand Jury Subpoena (Mark Torf/Torf Environmental Management)),
     357 F.3d 900 (9th Cir. 2004).  Those declarations have now been submitted.
     [4]  PCS also sought to compel the production of the settlement agreement of a Massachusetts case.
28   The court has already granted that motion.  See ECF No. 111.

1   the attorney, providing a privileged area within which he can analyze and prepare his client's

2   case." United States v. Nobles, 422 U.S. 225, 238 (1975).  The modern work product doctrine,

3   however, is more expansive, in that it protects materials "prepared in anticipation of litigation or

4   for trial by or for another party or its representative (including the other party's attorney,

5   consultant, surety, indemnitor, insurer, or agent)."  Fed. R. Civ. P. 26(b)(3)(A).  The protection

6   thus reaches beyond the original protection of the attorney's thought processes and strategies, to

7   protect anything prepared "in anticipation of litigation."  However, protecting an attorney's

8   thoughts and legal strategies is still a major concern of the doctrine.  See Fed. R. Civ.

9   P. 26(b)(3)(B) (even if work product must be produced, the court "must protect against disclosure

10   of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other

11   representative concerning the litigation").

12       A difficulty arises when investigative documents were prepared for a "dual purpose," that

13   is, not only in anticipation of litigation, but also as part of the ordinary course of business, or

14   because their preparation was required by law.  The Ninth Circuit addressed this problem in Torf

15   and United States v. Richey, 632 F.3d 559, 568 (9th Cir. 2011).  In a dual purpose situation, the

16   court uses the "because of" test, which states that:

17
18
19
20

> a document should be deemed prepared "in anticipation of
> litigation" and thus eligible for work product protection under
> Rule 26(b)(3) if "in light of the nature of the document and the
> factual situation in the particular case, the document can be fairly
> said to have been prepared or obtained because of the prospect of
> litigation."

21   Torf, 357 F.3d at 907 (quoting Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, 8

22   Federal Practice & Procedure § 2024 (2d ed. 1994)); Richey, 632 F.3d at 568 (same).

23       Importantly,

24
25
26
27

> [t]he "because of" standard does not consider whether litigation was
> a primary or secondary motive behind the creation of a document.
> Rather, it considers the totality of the circumstances and affords
> protection when it can fairly be said that the "document was created
> because of anticipated litigation, and would not have been created
> in substantially similar form but for the prospect of that
> litigation[.]"

28   Torf, 357 F.3d at 908 (quoting United States v. Adlman, 134 F.3d 1194, 195 (2nd Cir. 1998));

1    Richey, 632 F.3d at 568 (same).  The court must therefore examine the totality of the

2    circumstances surrounding Elite's investigation.[5]

3                    2.  Facts

4            Some facts are difficult to sort out, because plaintiff has provided possibly contradictory

5    sworn versions of whether it was plaintiff or plaintiff's counsel that hired Elite to conduct its

6    investigation.[6]  That issue is not determinative of the work product protection, however.  The

7    issue here is whether Elite conducted its investigation and prepared its reports in anticipation of

8    litigation, not whether plaintiff or its counsel hired Elite and directed the investigation.

9            The uncontradicted evidence before the court is that Elite was hired – whether by plaintiff

10   or by plaintiff's counsel – to conduct an investigation in anticipation of likely litigation against its

11   insured, Smith Systems.  See Declaration of Michael White  (ECF No. 114) ¶¶ 3 (upon getting

12   notification of the incident, plaintiff "determined that damages claims and/or litigation was likely

13   to result") & 7 ("it was clear to CCIC that this incident was very likely to result in litigation and

14   therefore in anticipation of litigation it was prudent and in the best interest of our insured to take

15   immediate steps to retain defense counsel and investigators . . . to defend Smith Systems in

16   litigation arising from the fire"); Declaration of Kevin K. Cholakian (ECF No. 112) ¶¶ 4-5 ("[I]t

17   was clear to me that this incident was very likely to result in litigation.  In order to best defend my

18   client, Smith Systems, I felt it necessary to retain Elite Investigation to assist my firm in

19   ─────────────────
     [5]  PCS asserts that "factual information cannot be shielded under a claim of privilege," and that

20   reports cannot be "cloaked" just by send them to a lawyer, citing Upjohn v. United States, 449
     U.S. 383, 395-96 (1981).  ECF No. 108 at 20.  Although Upjohn does discuss the work product

21   doctrine, the language from Upjohn dealing with "underlying facts" and sending reports to
     lawyers, deals with the attorney-client client privilege, not the work product doctrine.  PCS does
     not explain what relevance that discussion has to this matter, so the court will not consider it.

22   [6]  At plaintiff's Rule 30(b)(6) deposition, Michael White, testifying on behalf of plaintiff, testified
     that the investigation by Elite "was requested by Carolina Casualty Insurance."  ECF No. 115-1

23   at 6.  In addition, when asked who directed Elite to commence its work, White testified, "I did."
     Id. at 12.  In opposing PCS's motion to compel, however, White states in a sworn declaration that

24   "Cholakian & Associates [plaintiff's lawyers] hired Elite Investigations to assist with their
     investigation."  Declaration of Michael White  (ECF No. 114) ¶ 5.

25
     PCS's argument that the lawyers could not have hired Elite because "Elite was involved in the

26   investigation two days before the attorneys became involved" (ECF No. 108 at 21), is not correct.
     The evidence before the court shows that the lawyers were retained by CCIC on July 8, 2011, the

27   day CCIC was notified about the incident, and that Elite was contacted on July 8 or 9, 2011,
     within "24 hours" after CCIC was notified.  White Decl. ¶ 2; Cholakian Decl. ¶ 1; ECF No. 115-1

28   at 6.

1  investigating the facts of the July 6, 2011 fire . . . [¶] to further the defense of Smith Systems in

2  litigation that was sure to result . . .").[7]

3        Meanwhile, there are no facts currently before the court showing that Elite was retained

4  for any purpose other than the defense of anticipated litigation.  PCS only asserts, in the Joint

5  Statement, that "for several months, . . . the 'claim' that Plaintiff was investigating was a claim by

6  Smith Systems, its insured . . .."  ECF No. 108 at 21.  However, plaintiff offers no evidence that

7  that there was a claim by Smith Systems, or that plaintiff was investigating that claim "for several

8  months."  The only evidence in this regard comes from plaintiff, which asserts that the Elite

9  investigation, from the start, was about how to defend Smith Systems in anticipated litigation.

10  See Cholakian Decl. ¶¶ 4-5; White Decl. ¶ 7.

11                    3.  Substantial need for the reports

12        PCS asserts that it has a substantial need for the Elite reports, apparently because Elite's

13  investigator was the only person who investigated the scene of the incident.  ECF No. 108 at 22.

14  PCS asserts that it did not know about the incident "until later."

15        This is not enough to establish "substantial need."  PCS does not explain when it became

16  aware of the incident, or why it did not immediately investigate upon learning of it.  It does not

17  explain why it cannot obtain the information it needs from depositions or other discovery.

18                    4.  Resolution

19        Plaintiff has made a sufficient showing that the Elite reports were prepared in anticipation

20  of litigation, and PCS has not made a sufficient showing of substantial need for them.

21        B.        Plaintiff's claim file

22        PCS seeks the compelled production of the contents of plaintiff's claim file regarding this

23  incident.  Plaintiff asserts that the entire claim file is not discoverable because everything in it was

24  created in anticipation of litigation against its insured, Smith Systems.  ECF No. 108 at 32 ("[t]his

25  _____

26  [7]  The court accepts these apparently conflicting versions as evidence for plaintiff, because PCS
does not dispute that one or the other (plaintiff or its counsel), or both, hired Elite to conduct the
investigation.  In what may be an attempt to explain away the apparently conflicting testimony,
27  White states that "Cholakian & Associates hired Elite Investigations to assist with their
investigation.  Arrangement were made by CCIC with Elite investigations to submit invoices
28  directly to CCIC in accord with our vendor policy."  White Decl. ¶ 5.

1   case is a third party case").  Plaintiff has now produced a 159-page privilege log, having been

2   ordered to produce "a detailed privilege log of all documents in its claim file that it is withholding

3   from discovery pursuant to a claim of work product or privilege."  See ECF No. 111 at 2.  Since

4   plaintiff has withheld every single document in the claim file pursuant a claim of privilege, the

5   court infers that the privilege log covers every document in the claim file.  Rule 26(b)(5) provides

6   that, when claiming a privilege, a party must:

7
8           (i) expressly make the claim; and (ii) describe the nature of the
            documents, communications, or tangible things not produced or
            disclosed – and do so in a manner that, without revealing
9           information itself privileged or protected, will enable other parties
            to assess the claim.

10  Fed. R. Civ. P. 26(b)(5).

11          PCS's motion to compel was made without the benefit of the privilege log that plaintiff

12  has now produced.  Accordingly, other than as set forth below, the court will deny the motion to

13  compel without prejudice to its renewal in light of the privilege log.  The court rules on the

14  following matters, however, which are not dependent upon the existence of an adequate privilege

15  log.

16                              1.  "Claim file privilege"

17          Plaintiff is withholding many of the documents in its claim file on the basis of what it calls

18  the "claim file" privilege, for which it cites Tayler v. Travelers Ins. Co., 183 F.R.D. 67, 71

19  (N.D.N.Y. 1998) (Hurd, M.J.), Weitzman v. Blazing Pedals, Inc., 151 F.R.D. 125, 126 (D. Colo.

20  1993) (Borchers, M.J.), and Cal. Ins. Code § 791.13.

21          Tayler (which, in any event, does not purport to state the law applicable in the Ninth

22  Circuit), does not mention the existence of a "claim file" privilege.  Rather, Tayler is a case in

23  which the court was called upon to determine whether everything in the insurer's claim file was

24  collected in anticipation of litigation and therefore protected by the work product doctrine, or

25  collected in the ordinary course of business and therefore not protected:

26
27          The question is simple: Is an insured entitled to discovery of his
            insurance carrier's file and to depose adjusters in a lawsuit seeking
            damages under the uninsured motorist provision of a policy?
28          Travelers asserts that this information qualifies as material prepared
            in anticipation of litigation and is therefore immune from discovery,

1   absent a showing of substantial need and undue hardship. The
    plaintiff, however, contends that this material is merely information
2   gathered in the ordinary course of the defendant's business and
    therefore is discoverable.

3

4   Tayler, 183 F.R.D. at 68-69.  The court found that in that "first party" action – between the

5   insured and his own insurance company – there was no showing that anything in the file was

6   prepared in anticipation of litigation:

7       Travelers has not demonstrated that the materials sought were
        prepared with an eye toward litigation. More specifically, it has not
8       shown that the materials were prepared after it rejected plaintiffs'
        claim or had firmly decided to do so. The materials were merely
9       prepared in the ordinary course of the insurance business in an
        attempt to aid the defendant in an evaluation of plaintiffs' claim.
10

11  Id., at 72.  The court accordingly *granted* discovery on the entire claim file.

12      Weitzman is much more to the point, although it too never mentions the existence of a

13  "claim file" privilege.  Like the Tayler court, the court in Weitzman was called upon to determine

14  whether everything in the claim file was protected work product.  In Weitzman – a "third party"

15  claim between the insurance company and a person making a claim against its insured –

16  everything was protected by the work product doctrine.  It was not protected because of a "claim

17  file" privilege, but because there was a substantial probability that it was all prepared in

18  anticipation of litigation:

19      All of the materials Plaintiffs seek were generated after August 18,
        1992, when Plaintiffs sent their demand letter and threatened
20      litigation.   Under these circumstances, it appears that when the
        materials sought were prepared, there was a substantial probability
21      of imminent litigation over the claim.

22  Weitzman, 151 F.R.D. at 127 (emphasis added).  Since both cases plaintiff relies upon were

23  decided based upon the work product doctrine, the court sees no basis for creating, or

24  recognizing, a separate "claim file" privilege, and will not do so.  Accordingly, the assertion of

25  "claim file" privilege is overruled.

26              2.  Work product doctrine

27      The work product doctrine, like the attorney-client privilege, is subject to waiver if, for

28  example, the material at issue is disclosed outside the boundaries of the protection.  In Hernandez

11

1   v. Tanninen, 604 F.3d 1095 (9th Cir. 2010), for example, in opposing a motion for summary

2   judgment, plaintiff disclosed communications between himself and his former lawyer, as well as

3   the lawyer's notes.  The court held that he thereby waived the work product protection, although

4   the waiver was limited to the subject of what was disclosed.  Hernandez, 604 F.3d at 1100

5   ("Hernandez produced notes from Ferguson's communications with Tanninen that were protected

6   work product, but that constituted a waiver of work product privilege only as to that subject").

7       PCS asserts that plaintiff has waived the work product protection by disclosing the

8   contents of notes from the claim file.  The subject of the disclosed notes is the timing of when the

9   plaintiff and plaintiff's law firm were first contacted about the fire and spill.  See ECF No. 108

10  at 76-79.  Plaintiff's claim of work product protection will therefore be overruled as to any

11  documents in the claim file reflecting the timing of when plaintiff and its law firm were contacted

12  about the incident.

13                  3.  Cal. Ins. Code § 791.13

14      Plaintiff identifies Cal. Ins. Code § 791.13 as a basis for withholding some of the

15  documents on its privilege log.  However, plaintiff does not explain why a state privilege would

16  apply in this federal case.  "Where there are federal question claims and pendent state law claims

17  present, the federal law of privilege applies."  Agster v. Maricopa County, 422 F.3d 836, 839-40

18  (9th Cir.), cert. denied, 546 U.S. 958 (2005).  This claim of privilege is overruled.

19                  4.  The privilege log

20      Now that plaintiff has produced the privilege log for documents in its claim file, PCS may

21  renew its motion to compel if it wishes.  By way of guidance however, the court identifies the

22  following facial defects in plaintiff's privilege log relating to the claim file.

23      First, the privilege log contains no "key" to identify the senders and recipients of

24  communications for which plaintiff claims privilege.  While some of the names are known from

25  other filings, some names are not familiar to the undersigned (although they may be familiar to

26  ////

27  ////

28  ////

1   PCS).[8]  An explicit statement of the identities of all senders and recipients of communications is

2   essential for the court to make a determination of whether a protection or privilege exists.  Also, it

3   is not sufficient to identify a person simply as an attorney, attorneys' staff, investigator or

4   investigator's staff, without indicating which entity that person is associated with and/or

5   represents.

6          Second, several entries contain insufficient information to determine whether the

7   communication is privileged.  For example, plaintiff is withholding a July 9, 2011 email

8   communication from Mike White (client) to Brian Finn (attorney) re "letter."  There is no

9   description of the letter, and therefore no way for the court to determine if the communication

10  relates to the purpose of the attorney's representation of his client.  Other entries contain even less

11  information.  For example, plaintiff is withholding a July 14, 2011 email communication from

12  Mike White to Kevin Cholakian (attorney), identified only as "E-mail communication re."  Other

13  entries contain information that may be meaningful to plaintiff, but mean nothing to the court, and

14  therefore make it impossible for the court to determine whether a protection or privilege exists.

15  For example, some entries are described as relating to "California Biennial Report."  While the

16  court could use external sources to research what this is, it will not rely on such sources to do the

17  work that plaintiff should have done.  Plaintiff's privilege log must give enough information for

18  the court to determine whether a protection or privilege exists, in the event PCS renews its motion

19  to compel.

20         Third, plaintiff has not numbered any of the more than 700 documents in its privilege log.

21  While this may not be a legal issue, it seriously impedes the court's ability to determine which

22  _____

23  [8]  From other documents, it is known that, for example, Kevin Cholakian and Brian Finn are
    attorneys for plaintiff, that Mike White is an employee of plaintiff and that Don Stefoff is an

24  employee of Elite.  However, the identities of, for example, Semha Alwaya,
    "ache1@earthlink.net," Anna Dungo, E. Moore, Monte Smith, K. Hadenfeldt and Millisa (or

25  Mellisa) Coe, and many, many others, are not known to the court.

26  Even if these unknown names appear somewhere in the papers filed by one side or the other, it is
    not proper for plaintiff to put the burden on the court to root through every paper ever filed in this

27  case to identify individual names.  As courts throughout the country have complained for years,
    and apparently to little effect, "judges are not like pigs, hunting for truffles buried in briefs . . .."

28  U.S. v. Mageno, 762 F.3d 933, 954-55 (9th Cir. 2014) (internal quotation marks omitted); see
    also, U.S. v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam).

1  document is which, as it appears that some of them may have the same date, sender, recipient,

2  description and privilege claimed.[9]  Plaintiff is reminded that if PCS renews its motion to compel,

3  plaintiff bears the burden of establishing the protection or privilege as to each and every

4  document on its privilege list.

5          In addition, before it produced a privilege log for the documents it was withholding from

6  its claim file, plaintiff asserted only two privileges or protections for those documents: the work

7  product protection, and the "claim file" privilege.  See ECF No. 108 at 28-35.  Plaintiff's

8  privilege log now contains additional asserted bases for withholding the documents that PCS has

9  not had an opportunity to address.  Accordingly, if PCS renews its motion to compel, it shall

10  address those additional bases, even if it also asserts that those bases are waived.

11          The parties are reminded of their obligation to further meet and confer before any renewed

12  motion is filed.

13                                   IIII.  CONCLUSION

14          For the reasons set forth above, IT IS HEREBY ORDERED that:

15          1.      Plaintiff's motion to compel (ECF No. 107), is GRANTED in part and DENIED in

16  part, as follows:

17                  a.      Plaintiff's motion to compel the production of documents that PCS claims

18  are protected by a joint defense privilege between PCS and Oahu, and are listed as such on PCS's

19  privilege log, is DENIED without prejudice to its renewal, since the privilege log was submitted

20  after plaintiff's motion was filed.

21                  b.      Plaintiff's motion to compel the production of documents that PCS claims

22  are protected by a joint defense privilege between PCS and Matson, and are listed as such on

23  PCS's privilege log, is GRANTED, and PCS is ORDERED to produce those documents to

24  plaintiff no later than 7 days from the date of this order.

25                  c.      Plaintiff's motion to compel the production of responsive documents it

26  believes PCS has but is not producing, and not identifying on a privilege log, is DENIED.

27  ───────────────

28  [9]  See, for example, the July 10, 2011 letters from Mike White to Brian Finn, on Page 1, Entries 5 and 6.

1    2.    Defendant PCS's motion to compel (ECF No. 106), is GRANTED in part, and

2    DENIED in part, as follows:

3         a.    Plaintiff's assertion of a "claim file" privilege is OVERRULED.

4         b.    Plaintiff's assertion of a privilege based upon Cal. Ins. Code § 791.13 is

5    OVERRULED.

6         c.    PCS's motion to compel the production of the Elite reports is DENIED, on

7    the grounds that they are protected by the work product doctrine.

8         d.    PCS's motion to compel the production of plaintiff's claim file is

9    GRANTED, to the degree it seeks the notes or other documents relating to when plaintiff or

10   plaintiff's lawyers were notified of the incident at issue here, on the grounds that the protection

11   was waived for those documents.  The motion is otherwise DENIED without prejudice to its

12   renewal, since the privilege log was submitted after PCS filed its motion.

13   3.    The requests by both sides for sanctions for the other side's failure to meet and

14   confer are DENIED, because the record before the court shows that the parties did meet and

15   confer.

16   DATED: March 27, 2015

17

18   ALLISON CLAIRE
     UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28

15