UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| CAROLINA CASUALTY INSURANCE COMPANY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>OAHU AIR CONDITIONING SERVICE, INC. dba OAHU AIR CONDITIONING CO., PACIFIC COMMERICAL SERVICES, LLC., MATSON NAVIGATION COMPANY, INC., and DOES 1 through 100,<br><br>　　　　　Defendants. | CIV. NO. 2:13-01378 WBS AC<br><br>MEMORANDUM AND ORDER RE: MOTION TO DISMISS |
| OAHU AIR CONDITIONING SERVICE, INC.,<br><br>　　　　　Third-Party Plaintiff,<br><br>　　v.<br><br>CLEAN HARBORS ENVIRONMENTAL SERVICES, INC., SMITH SYSTEMS TRANSPORTATION, INC., GOOGLE, INC., THE PHYSICIANS MEDICAL GROUP, TEST AMERICA LABORATORIES, INC., & NEKTAR THERAPEUTICS,<br>　　　　　Third-Party Defendants. | |

----oo0oo----

1

     Defendant Oahu Air Conditioning Service, Inc. ("OAC") filed its third-party complaint in this action against TestAmerica Laboratories, Inc. ("TestAmerica")[1], Clean Harbors Environmental, Inc. ("Clean Harbors"), Smith Systems Transportation, Inc. ("Smith"), The Physicians Medical Group, Google Inc., and Nektar Therapeutics seeking contribution, declaratory relief, and equitable indemnity for expenses incurred by OAC in responding to the release of hazardous substances at Elder Creek Yard.  Third-party defendant TestAmerica now moves to dismiss portions of OAC's Second Amended Third-Party Complaint ("SAC") for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket No. 182.)

I.   Factual and Procedural History

     In June 2011, Clean Harbors received a drum of waste refrigerant oil from OAC at its facility in Oakland, California. (SAC ¶¶ 23-24 (Docket No. 178).)  On June 29, 2011, Smith accepted for transport a trailer from Clean Harbors that included the drum from OAC and drums containing various other waste substances from third-party defendants.  (Id. ¶ 25.)  Smith delivered the trailer to Elder Creek Yard, a waste disposal site in Sacramento, California.  (Id. ¶¶ 32-33.)  After Smith delivered the trailer, the Sacramento Police Department was called to the disposal site because the trailer was observed emitting white smoke.  (Id. ¶ 36.)  After several hours, an

---

[1] TestAmerica Laboratories Inc. was incorrectly sued as "Test America Laboratories, Inc." and will be referred to as TestAmerica in this Order.

1 active fire broke out and completely engulfed the trailer.  (Id.
2 ¶¶ 36-37.)  A subsequent investigation by the Sacramento Fire
3 Department revealed that the trailer contained refrigerator waste
4 oil that OAC had shipped to California for disposal and the fire
5 resulted in the release of hazardous vapors and contaminated
6 water runoff into the environment.  (Carolina Casualty's First
7 Am. Compl. ("Carolina Casualty's FAC") ¶ 13 (Docket No. 7).)
8          As a result of this incident, a number of claimants
9 issued Smith notices of violation and demanded that it pay for
10 the cleanup of the hazardous waste spill from the trailer.  (Id.
11 ¶ 22.)  Pursuant to Smith's insurance policy, which required
12 Carolina Casualty Insurance Company ("Carolina Casualty") to
13 provide a defense and indemnify Smith from any claims resulting
14 from a hazardous waste spill, Carolina Casualty settled and paid
15 claims brought against it by several claimants, including the
16 City of Sacramento, the County of Sacramento, and Clean Harbors.
17 (Id. ¶¶ 23-24.)  In addition, Carolina Casualty reimbursed Smith
18 for its cleanup expenses and indemnified it against additional
19 personal injury damages.  (Id. ¶ 25.)  Carolina Casualty then
20 sued OAC and two other defendants alleging that they were
21 involved in the supply, packing, and transportation of the
22 refrigerator waste oil that Smith transported to Sacramento.
23 (Id. ¶¶ 26-27.)  Carolina Casualty sought contribution,
24 indemnity, apportionment of fault, and subrogation for the
25 payments it incurred as a result of the hazardous waste spill.
26 (Id.)
27          In its third-party complaint OAC alleges that
28 TestAmerica is an arranger for disposal of hazardous wastes

3

within the meaning of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") section 107(a)(3), 42 U.S.C. § 9607(a)(3), and seeks (1) contribution pursuant to sections 107(a), 112(c), and 113(f) of CERCLA, 42 U.S.C. §§ 9607(a), 9613(f); (2) declaratory relief under CERCLA section 113(g)(2), 42 U.S.C. § 9613(g)(2); (3) contribution or indemnity pursuant to the Hazardous Substance Account Act ("HSAA"), Cal. Health & Safety Code § 25363; and (4) equitable indemnification and contribution under state law.  (SAC ¶¶ 46-67.)

TestAmerica moves to dismiss OAC's first, second, and fourth claims in their entirety.  (TestAmerica's Mot. (Docket No. 182-1).)  In the alternative, TestAmerica requests the court dismiss the first and fourth claims in their entirety and the second claim to the extent it seeks a declaration of liability for costs of litigation including attorney's fees.  (Id. at 10.)

II.  Discussion

On a motion to dismiss under Rule 12(b)(6), the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).  To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," and where a complaint pleads facts that are "merely consistent with a defendant's liability," it "stops short of the

4

1 line between possibility and plausibility." Ashcroft v. Iqbal,
2 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557).
3     "While a complaint attacked by a Rule 12(b)(6) motion
4 to dismiss does not need detailed factual allegations, a
5 plaintiff's obligation to provide the 'grounds' of his
6 entitle[ment] to relief' requires more than labels and
7 conclusions . . . ." Twombly, 550 U.S. at 555 (alteration in
8 original) (citations omitted). "Threadbare recitals of the
9 elements of a cause of action, supported by mere conclusory
10 statements, do not suffice." Iqbal, 556 U.S. at 678; see also
11 Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the
12 framework of a complaint, they must be supported by factual
13 allegations.").
14     A. Claim 1: Contribution Pursuant to CERCLA Section 113(f)
15     "Two provisions of the Comprehensive Environmental
16 Response, Compensation, and Liability Act of 1980 (CERCLA)--§§
17 107(a) and 113(f)--allow private parties to recover expenses
18 associated with cleaning up contaminated sites." United States
19 v. Atlantic Research Corp., 551 U.S. 128, 131 (2007) (citing 42
20 U.S.C. §§ 9607(a), 9613(f)). Under section 113(f) of CERCLA,
21 "[a]ny person may seek contribution" for response costs "from any
22 other person who is liable or potentially liable under section
23 9607(a) of this title, during or following any civil action under
24 section 9606 of this title or under section 9607(a) of this
25 title." 42 U.S.C. § 9613(f)(1). Thus, section 113(f) permits
26 suit before or after the establishment of common liability. "The
27 court may allocate response costs among liable parties using such
28 equitable factors as the court determines are appropriate." Id.

Contribution is, therefore, determined as a percentage of fault. Atlantic Research, 551 U.S. at 138-39.

"[T]he only response costs recoverable from the defendant in the contribution action are those that were necessary and consistent with the" national contingency plan ("NCP"). AmeriPride Servs. Inc. v. Tex. E. Overseas Inc., 782 F.3d 474, 490 (9th Cir. 2015). The NCP "specifies procedures for preparing and responding to contaminations" and "is designed to make the party seeking response costs choose a cost-effective course of action to protect public health and the environment." City of Colton v. Am. Promotional Events, Inc., 614 F.3d 998, 1003 (9th Cir. 2010) (citation omitted). "Response costs are considered necessary when an actual and real threat to human health or the environment exist[s]" and "consistent with the NCP 'if the action, when evaluated as a whole, is in substantial compliance' with it." Id. (quoting 40 C.F.R. § 300.700(c)(3)(i)). Thus, compliance with the NCP is an element of a prima facie case under CERCLA that must be pled in a party's complaint. See Coppola v. Smith, 935 F. Supp. 2d 993, 1007 (E.D. Cal. 2013) (finding plaintiff's complaint was adequately pled when plaintiff alleged the response costs were the result of contamination to its property by the defendants and the response costs were necessary and consistent with the NCP); Carson Harbor Vill., Ltd. V. Unocal Corp., 287 F. Supp. 2d 1118, 1153-54 (C.D. Cal. 2003).

In its claim for contribution under section 113(f) OAC has failed to plead that the cleanup costs it seeks to recover are consistent with the NCP, a necessary element of a CERCLA

6

1 contribution claim.  Simply alluding to plaintiff Carolina
2 Casualty's underlying burden to assert a valid claim under CERCLA
3 (See SAC ¶ 55) does not amount to an allegation of NCP
4 compliance.  Accordingly, the court will grant TestAmerica's
5 motion to dismiss OAC's section 113(f) claim with leave to amend.

      B. Claim 2: Declaratory Relief under CERCLA Section 113(f)

7       CERCLA section 113(g)(2) also contains a provision for
8 declaratory relief: "In any such action described in this
9 subsection, the court shall enter a declaratory judgment on
10 liability for response costs or damages that will be binding on
11 any subsequent action or actions to recover further response
12 costs or damages."  42 U.S.C. § 9613(g)(2).  "Therefore, if a
13 plaintiff successfully establishes liability for the response
14 costs sought in the initial cost-recovery action, it is entitled
15 to declaratory judgment on present liability that will be binding
16 on future cost-recovery actions."  Am. Promotional Events, Inc.,
17 614 F.3d at 1007.  "[D]eclaratory relief is available only if
18 liability for past costs has been established."  Id. at 1008.

19       Given that OAC did not sufficiently plead NCP
20 compliance in its section 113(f) claim for contribution for past
21 costs, TestAmerica's motion to dismiss OAC's claim for
22 declaratory relief on the same grounds must also be granted.

23     C. Claim 4: Equitable Indemnification and Contribution under
24        State Law

25       In its fourth claim, OAC alleges it is entitled to
26 indemnification and contribution from TestAmerica and the other
27 third-party defendants under state law.  Under California Code of
28 Civil Procedure section 875, there is a "right of contribution"

7

1  among defendants "[w]here a money judgment has been rendered
2  jointly against two or more defendants in a tort action." Cal.
3  Civ. Proc. Code § 875(a); see e.g. United States v. Lyon, Civ.
4  No. 07-0491 LJO GSA, 2007 WL 4374167, at *8 (E.D. Cal. 2007)
5  (allowing a state law contribution claim under California Code of
6  Civil Procedure section 875 in a CERCLA case to survive a motion
7  to dismiss).  There is also an "equitable indemnity rule to
8  permit a concurrent tortfeasor to obtain partial indemnity from
9  other cotortfeasors on a comparative fault basis." Prince v.
10 Pac. Gas & Elec. Co., 45 Cal. 4th 1151, 1164 (Cal. 2009).  Thus,
11 to maintain a state law claim for equitable indemnification or
12 contribution, a third-party plaintiff must establish that the
13 third-party defendants are joint tortfeasors.
14       OAC alleges that TestAmerica and the other third-party
15 defendants "negligently hired, retained or supervised others to
16 package and transport and ultimate[ly] dispose of their hazardous
17 waste materials."  (SAC ¶ 31.)  The transporters, Smith and Clean
18 Harbors, allegedly did not properly package the waste substances
19 to prevent spilling, tipping, or accidental discharge; take into
20 account that the trailer would be stored for over a week in
21 temperatures of 95 to 100 degrees Fahrenheit; or keep proper
22 records of the hazardous substances transported.  (Id. ¶¶ 32, 35,
23 39.)  However, OAC failed to allege a causal relationship between
24 TestAmerica's allegedly negligent hiring and the negligent acts
25 of the transporters that ultimately resulted in the hazardous
26 waste spill and damages.  The Complaint contains only a
27 conclusory statement that "[a]s a direct and proximate result of
28 Third-Party Defendants' acts or omissions, OAC has been required

1  to act in the protection of its own interests by defending
2  against the Complaint filed in this action." (SAC ¶ 65.) This
3  allegation of negligent hiring, unsupported by any facts, is
4  insufficient to survive the plausibility standard of <u>Iqbal</u> and
5  <u>Twombly</u>.
6       OAC also alleges that the third-party defendants are
7  joint tortfeasors because "[t]he hazardous waste generated by
8  Third-Party Defendants The Physicians Medical Group, Google,
9  Inc., Test America Laboratories, Inc., and Nektar Therapeutics
10 may have contributed to or caused the trailer fire." (<u>Id.</u> ¶ 43.)
11 Once again, OAC failed to provide any facts to establish a
12 negligence claim under tort law--OAC did not allege how
13 TestAmerica breached a duty of care or how that breach was a
14 legal cause of the trailer fire.
15      As a result, OAC has failed to allege sufficient facts
16 to establish that TestAmerica is a joint tortfeasor who could
17 plausibly be held liable for contribution or equitable
18 indemnification under state law. Accordingly, the court will
19 grant TestAmerica's motion to dismiss the fourth claim.
20      IT IS THEREFORE ORDERED that TestAmerica's motion to
21 dismiss OAC's Second Amended Complaint (Docket No. 178) be, and
22 the same hereby is, GRANTED.
23      OAC has twenty days from the date this Order is signed
24 to file a Third Amended Complaint, if it can do so consistent
25 with this Order.
26 Dated: October 23, 2015

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

9